ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| CARIBBEAN MEDICAL CANNABIS CENTER, LLC/ EARTH GIFT<br><br>**RECURRENTE**<br><br>v.<br><br>JUNTA REGLAMENTADORA DEL CANNABIS MEDICINAL<br><br>**AGENCIA RECURRIDA** | KLRA202400093 | Revisión administrativa procedente de la Junta Reglamentadora del Cannabis Medicinal<br><br>Caso Núm. JRCM-2022-014<br><br>Sobre: INFRACCIÓN NÚM CM-NI-2021-165 |
|---|---|---|

Panel integrado por su presidenta, la Jueza Domínguez Irizarry, la Jueza Grana Martínez y el Juez Pérez Ocasio.

Grana Martínez, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 23 de abril de 2024.

La recurrente, Caribbean Medical Cannabis Center, LLC, en adelante CMCC, mediante recurso de revisión administrativa solicitó la revocación de la determinación de la Junta Reglamentadora del Cannabis Medicinal, en adelante JRCM, en la que se le impone un conjunto de multas que suman la totalidad de $70,000.00. Además, cuestiona las determinaciones de la JRCM sobre el peso y manejo de la prueba.

La recurrida, Junta Reglamentadora del Cannabis Medicinal, presentó oposición al recurso solicitando la desestimación de la misma.

Los hechos esenciales para comprender la determinación que hoy tomamos son los siguientes:

## I.

La parte recurrente es una corporación autorizada en Puerto Rico para la venta de cannabis medicinal con número de licencia CM-2021-288, expedida por la Junta Reglamentadora del Cannabis Medicinal. Caribbean Medical Cannabis Center es la operadora del dispensario Earth Gift en Plaza Luquillo, ubicado en la carretera PR

Número Identificador

SEN2024_____

193, Calle Fernández García en el Barrio Mata de Plátano, Luquillo, Puerto Rico.

El 8 de abril de 2022, en horas de la mañana, según los hechos expuestos, la JRCM recibió una confidencia en donde se alegaba que el dispensario operado por CMCC se encontraba operando sin servicio de energía eléctrica ni agua potable. Como resultado, en la tarde, la Agencia procedió a enviar a dos inspectores a las instalaciones del dispensario. Véase, resolución recurrida en las págs. 67-70 del recurso de revisión.

Al personarse en el lugar, los inspectores corroboraron que, en efecto, las instalaciones se encontraban sin servicio de energía eléctrica y sin generador eléctrico, mientras continuaban con las operaciones desde el día 6 de abril de 2022, cuando ocurrió un apagón general. Por lo tanto y, a raíz de la inspección, el 14 de abril de 2022, la Junta Reglamentadora del Cannabis Medicinal impuso una serie de multas por infracciones al Reglamento para Manejar el Estudio, Desarrollo e Investigación del Cannabis para la Innovación, Normas Aplicables y Límites, aprobado al amparo de la Ley 42-2017.[1] Las multas impuestas por la Junta fueron que:

(1) El establecimiento no notificó a la Oficina sobre la pérdida de acceso al sistema de rastreo y, por lo tanto, incumplió con el Art. 46, inciso (I), sub inciso (3), y con el Art. 46, inciso (M) del Reglamento 9038, razón por la que se le impuso una multa de $20,000.00. (Primera Infracción Grave).

(2) El establecimiento no tenía en funcionamiento el sistema de alarmas de seguridad y, por tanto, incumplió con el Art. 50, inciso (B), sub inciso (2), y con el Art. 50, inciso (I) del Reglamento 9038, por lo que se le impuso una multa de $5,000.00. (Primera Infracción Leve).

(3) El Establecimiento no tenía en funcionamiento el sistema de vigilancia por video y, por tanto, incumplió con el Art. 50, inciso (C); inciso (D); inciso (G), sub inciso (1) y el Art. 50 (I) del Reglamento

---

[1] Ley para Manejar el Estudio, Desarrollo e Investigación del Cannabis para la Innovación, Normas Aplicables y Límites ("Ley MEDICINAL")", Ley Núm. 42 de 9 de julio de 2017, 24 LPRA sec. 2621 et seq.

9038, por lo que se le impuso una multa de $5,000.00. (Primera Infracción Leve).

(4) En el establecimiento, el área de almacenamiento de inventario se encontraba sin mecanismos de seguridad y, por tanto, se incumplió con el Art. 53, inciso (C) y con el Art. 123, inciso (A), sub inciso (1) del Reglamento 9038, por lo que se le impuso una multa de $20,000.00. (Primera Infracción Grave).

(5) El establecimiento no contaba con iluminación adecuada en el área de procesamiento y almacenamiento de productos de cannabis medicinal y, por tanto, se incumplió con el Art. 58, inciso (C), sub inciso (10) y Art. 60, inciso (A), sub inciso (1) y sub inciso (4) y, a tenor con el Art. 123, inciso (A), sub inciso (1) del Reglamento 9038, por lo que se le impuso una multa de $20,000.00. (Primera Infracción Grave).

(6) El establecimiento mantuvo operaciones luego de haber sido apercibido de un cierre inmediato, sin la aprobación previa de la Oficina y, por tanto, el establecimiento incumplió con el Art. 144 y con el Art. 123, inciso (A), sub inciso (2) del Reglamento 9038, por lo que se impuso multa de $20,000.00. (Primera Infracción Grave).[2]

Así las cosas, la parte recurrente presentó, dentro del término establecido en ley, el 29 de abril de 2022, un recurso de revisión ante la Agencia Administrativa solicitando la Revisión y Desestimación de las Multas Administrativas. La vista en su fondo se efectuó el 14 de diciembre de 2022. Prácticamente, un año después, el 12 de diciembre de 2023, la Oficial Examinadora rindió su informe ante la Junta Reglamentadora del Cannabis Medicinal para el presente caso. En el mismo, se expuso—en esencia—como determinaciones de hechos, que:

(1) el día 8 de abril de 2022, los inspectores Yordalis Rivera Maldonado y Adair E. Pérez Torres, acudieron al establecimiento Caribbean Medical Cannabis Center LLC h/n/c Earth Gift, ubicado en la Carr. PR 193, Calle Fernández García, Plaza Luquillo, Local 6 y 7, en el Municipio de Luquillo, Puerto Rico por una confidencia que aludía a que el establecimiento se encontraba operando sin servicio de energía eléctrica.

---

[2] Se dejó sin efecto por la JRCM, así resulta del Informe de la Oficial Examinadora y de la Resolución Final de la Agencia.

(2) al llegar al lugar, los inspectores constataron que, en efecto, en el local no había servicio eléctrico y que el local estaba operando.

De igual forma, y aun cuando no lo consignó en la parte del Informe como determinaciones de hechos, la Examinadora concluyó ~~que~~ de la prueba documental y testifical presentada en la vista evidenciaria lo siguiente:

(1) El 8 de abril, día en que los inspectores acudieron al establecimiento, la primera puerta no tenía mecanismo de seguridad.

(2) En la segunda puerta fueron atendidos por el guardia de seguridad, Saúl Mercado, quién le brinda el acceso al interior del establecimiento.

(3) Ese acceso brindado por el guardia de seguridad es a través del uso de una puerta con llave.

(4) Una vez dentro del local, fueron atendidos por los empleados Kevin Agosto y Verónica Mangual.

(5) Que la falta de servicios de energía ocasionaba que las puertas no tuvieran mecanismo de seguridad.

(6) Que de la evidencia presentada no surge que el dispensario informara de la pérdida de energía y, por consiguiente, de la alegada falta de mecanismos de seguridad electrónica y pérdida del acceso al sistema de rastreo.

(7) Que, a preguntas de los inspectores, los empleados aseguraron estar sin el servicio de energía eléctrica desde el 6 de abril de 2022.

(8) Que no poseían un generador eléctrico que les supliera de energía ante la falta de servicio de electricidad.

(9) El 8 de abril de 2022, en horas de la tarde, la Oficina de la Junta Reglamentadora del Cannabis Medicinal había emitido una Orden de Acción Inmediata ordenando el cierre inmediato del establecimiento y solicitando notificación en caso de recuperación del servicio eléctrico.

(10) El 8 de abril de 2022 regresó el servicio eléctrico y lo notificaron por mensaje de texto al inspector, eventualmente, enviaron correo electrónico a la oficina notificando la recuperación del servicio.

(11) El 11 de abril de 2022 se presentaron nuevamente los inspectores en el local para confirmar la recuperación del servicio.

(12) Que, de esta última inspección, aseguran que el local contaba con los servicios de energía eléctrica

y, a su vez, con mecanismos de seguridad funcionando, adicional a poseer un generador eléctrico. Ordenando, así, la reapertura del local.

(13) También corroboraron que sin la autorización de la Oficina se había desprendido la cinta adhesiva colocada en la puerta de la bóveda con la firma, fecha y hora donde se custodiaron todos los productos de Cannabis Medicinal.

(14) El 14 de diciembre de 2022, el día de la vista en su fondo, CMCC presentó como testigos a Enrique Domínguez y a la señora Melissa Pagán, a quién ofrecieron como perito, aunque no fue aceptada por lo que la parte optó por no utilizar su testimonio.

Días después de rendido el informe, la Junta Reglamentadora del Cannabis Medicinal acogió las recomendaciones de la Oficial Examinadora y declaró NO HA LUGAR la petición de desestimar las multas, archivando solo una de éstas. La Resolución Final fue notificada el día 24 de enero de 2024.

Inconforme, CMCC presentó oportunamente recurso de revisión administrativa ante nos, señalando los siguientes errores:

(1) Erró la JRCM al establecer que el peso de la prueba en demostrar el funcionamiento de los mecanismos de seguridad le pertenecía a la parte Recurrente en lugar de la agencia administrativa que impuso las multas.

(2) Erró la JRCM al imponer multa de $20,000.00 por infracción al Artículo 46, Inciso (I), Sub Inciso (3), y a tenor con el Artículo 46, Inciso (M) del Reglamento 9038.

(3) Erró la JRCM al imponer multa de $5,000.00 por infracción al Artículo 50, Inciso (B), Sub Inciso (2), y a tenor con el Artículo 50, Inciso (I) del Reglamento 9038.

(4) Erró la JRCM al imponer multa de $5,000.00 por infracción al Artículo 50, Inciso (C), Inciso (D), Inciso (G), Sub Inciso (1), y a tenor con el Artículo 50, Inciso (I) del Reglamento 9038.

(5) Erró la JRCM al imponer multa de $20,000.00 por infracción al Artículo 53, Inciso (C), y a tenor con el Artículo 123, Inciso (A), Sub inciso (1) del Reglamento 9038.

(6) Erró la JRCM al imponer multa de $20,000.00 por infracción al Artículo 58, Inciso (C), Sub Inciso (10) y Artículo 60, Inciso (A), Sub Inciso (1) y Sub Inciso (4), y a tenor con el Artículo 123, Inciso (A), Sub inciso (1) del Reglamento 9038.

(7) Erró la JRCM al no permitir el testimonio pericial de la testigo de la parte aquí Recurrente, Melissa Pagán.

El 1 de abril de 2024, la JRCM presentó su oposición al recurso.

Evaluados los planteamientos de ambas partes resolvemos.

**II.**

**A. Ley para Manejar el Estudio, Desarrollo e Investigación del Cannabis para la Innovación, Normas Aplicables y Límites ("Ley MEDICINAL"), y la Facultad de la Junta para Reglamentar, Investigar, Imponer Multas y Adjudicar**

La industria del cannabis es una altamente regulada, de manera que solo se permite su uso para fines medicinales y científicos, reiterando la prohibición del uso recreacional y el mal manejo de esta sustancia.

La Ley 42-2017 provee un marco regulatorio que permite una alternativa legítima de tratamiento con cannabis para las personas con ciertas condiciones médicas. Además, el Gobierno prioriza el papel de la investigación y desarrollo científico, así como la integración de la Academia en el estudio del Cannabis y su uso para efectos médicos. Exposición de Motivos de la Ley. Esta ley crea como ente encargado de administrar el programa de cannabis medicinal, la Junta Reglamentadora del Cannabis Medicinal. 24 LPRA sec. 2621a(k). La JRCM es un Cuerpo Asesor Médico compuesto por el Secretario de Salud o su representante, dos médicos, un farmacéutico y un miembro de la academia con experiencia en investigación. Está adscrita al Departamento de Salud y goza de todos los poderes necesarios o convenientes para llevar a cabo y realizar los propósitos y disposiciones de la Ley 42-2017. 24 LPRA sec.2622a(a).

Como anticipamos, el Artículo 5 de la Ley Núm. 42-2017, establece expresamente las facultades que le fueron concedidas a la Junta Reglamentadora de Cannabis Medicinal para llevar a cabo los

propósitos expuestos en el referido estatuto. Estas facultades incluyen, pero sin limitarse a, las siguientes:

[...]

k. Emitir reglamentos para instrumentar esta Ley conforme a la Ley Núm. 170 de 12 agosto de 1988, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme".[3]

l. Celebrar vistas públicas conforme a su función adjudicativa. Adjudicar casos de asuntos bajo su jurisdicción cuando así lo requiera la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme".[4]

m. Realizar inspecciones a los tenedores de licencias.

n. Emitir, negar, revocar, suspender, restringir licencias e imponer multas administrativas conforme a las disposiciones de esta Ley y los reglamentos que promulgue para instrumentar la misma.

[...]

p. Cualquier otro poder que sea necesario para lograr los propósitos de esta Ley. 24 LPRA sec. 2622a.

En Puerto Rico nuestro ordenamiento jurídico ha reconocido la facultad de las agencias para imponer sanciones monetarias por violación a las leyes y reglamentos que estos administran. De hecho, la Asamblea Legislativa ha establecido mediante la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, una regla general en la que faculta a las agencias a multar por un máximo de $5,000.00 por infracción. Reconociendo como excepción, que cuando la ley especial de que se trate establezca cuantía mayor, se podrá imponer la cantidad mayor. 3 LPRA sec. 9701.

Cónsono a esto, la Ley 42-2017 expresamente le concede a la JRCM el poder de imponer multas administrativas por cada violación hasta un máximo de $100,000.00 a toda persona, natural o jurídica, que viole la ley o el reglamento. 24 LPRA sec. 2626d.

---

[3] Ley Derogada por la "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico," Ley Núm. 38 de 30 de junio de 2017, según enmendada. 3 LPRA 9601, et seq.

[4] *Íd.*

Conforme a su poder de reglamentación, la JRCM aprobó el Reglamento Núm. 9038, conocido como Reglamento para Manejar el Estudio, Desarrollo e Investigación del Cannabis para la Innovación, Normas Aplicables y Límites, en adelante el Reglamento. Este establece las reglas que regirán los procedimientos relacionados con la radicación, trámite y adjudicación de las solicitudes ante la JRCM. Además, aplica a todos los procesos sobre los cuales la JRCM tiene jurisdicción y competencia. Reglamento Núm. 9038, Artículo 2. El mismo aplica a toda persona, natural o jurídica que, use, posea, cultive, manufacture, transporte, realice pruebas de calidad o lleve a cabo estudios científicos sobre el Cannabis y sus derivados en Puerto Rico, trabaje para un establecimiento de Cannabis Medicinal y participe de una manera u otra en la Industria del Cannabis Medicinal. Reglamento Núm. 9038, Artículo 4. El capítulo IX del Reglamento Núm. 9038 establece una serie de requisitos específicos aplicables a los establecimientos de Cannabis Medicinal, tales como sistema de rastreo, licencia sanitaria y equipo de primeros auxilios, horarios de operación, requisitos de seguridad y otros más. De igual manera establece la gravedad de la infracción en caso de no cumplir con la rigurosa reglamentación. El Artículo 124, Capítulo XXIV, sobre Infracciones, categoriza estas en dos clases, leves y graves, así como también establece una aplicación progresiva dependiente de la recurrencia de la falta. Fija, entre otras cuantías, la de primera infracción leve en $5,000.00 y la de primera infracción grave $20,000.00. Véase, Art. 124 del Reglamento Núm. 9038.

**B. Revisión Judicial sobre Determinaciones de Agencias y Apreciación de la Prueba**

Las determinaciones de las agencias administrativas están sujetas a la revisión judicial del Tribunal de Apelaciones. 4 LPRA sec. 24y(c). El Tribunal de Apelaciones revisará, como cuestión de

derecho, las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. 3 LPRA sec. 9676.

Precisamente, sobre la revisión judicial de las determinaciones de hecho de las decisiones de las agencias, serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo. Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. 3 LPRA sec. 9675.

El examen jurídico de las determinaciones administrativas se circunscribe a determinar si las agencias han actuado en forma arbitraria, caprichosa, ilegal o tan irrazonablemente que constituya un abuso de discreción. Al evaluar, los tribunales revisores hemos de otorgar deferencia a las decisiones administrativas, pues estos organismos gubernamentales gozan de experiencia y conocimiento especializado sobre los asuntos ante su consideración, lo cual ampara sus dictámenes con una presunción de legalidad y corrección. *Hernández Feliciano v. Municipio de Quebradillas*, 211 DPR 99, 113-114 (2023); *OEG v. Martínez Giraud*, 210 DPR 79, 88-89 (2022); *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839 (2021); *Capó Cruz v. Junta de Planificación*, 204 DPR 581, 591 (2020); *Municipio de San Juan v. CRIM*, 178 DPR 163, 175 (2010). En fin, los dictámenes de las agencias gozan de una presunción de legalidad y corrección que subsiste mientras no se produzca suficiente prueba para derrotarla. *Hernández Feliciano v. Municipio de Quebradillas*; supra, pág. 114; *OEG v. Martínez Giraud*, supra, pág. 88-89; *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004); *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 130 (1998).

La parte que impugna judicialmente las determinaciones de hechos de una agencia tiene el peso de demostrar que no están basadas en el expediente o que las conclusiones del foro

administrativo son irrazonables. La razonabilidad es el criterio rector al momento de pasar juicio sobre la decisión de una agencia. *Hernández Feliciano v. Municipio de Quebradillas*; supra, pág. 115; *OEG v. Martínez Giraud*, supra, pág. 90; *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2018); *González Segarra et al. v. CFSE*, 188 DPR 252, 276–278 (2013); *OCS v. Universal*, 187 DPR 164, 178–179 (2012); *Otero v. Toyota*, 163 DPR 716, 727 (2005).

La evidencia sustancial que surge de la totalidad del expediente y en la que debe estar basada la determinación administrativa, ha sido definida jurisprudencialmente como aquella que es relevante y que una mente razonable podría aceptar como adecuada para sostener una conclusión. Así las cosas, ha de quedar claro que la deferencia no es absoluta y, por tanto, no implica que la evidencia sustancial esté sostenida por un ligero destello de evidencia o por simples inferencias. De manera que, el crisol evaluativo de las determinaciones administrativas siempre estará guiado por el concepto de razonabilidad, conforme la evaluación del expediente administrativo en su totalidad. *OEG v. Martínez Giraud*, supra, pág. 89. Amparados en la deferencia y razonabilidad, los tribunales analizarán las determinaciones de hechos de los organismos administrativos. *González Segarra et al. v. CFSE*, supra.

En cuanto a las determinaciones de derecho de las agencias, estas son revisables en todos sus aspectos. 3 LPRA sec. 9675. La revisión se ciñe a determinar si: (1) el remedio concedido por la agencia fue el apropiado, (2) las determinaciones de hecho de la agencia están basadas en evidencia sustancial que obra en el expediente administrativo visto en su totalidad y (3) las conclusiones de derecho fueron correctas. El respeto a la resolución administrativa se sostiene hasta que no se presente evidencia suficiente para derrotar la presunción de legalidad. *OEG v. Martínez Giraud,* supra, pág. 89; *Hernández Feliciano v. Municipio de*

*Quebradillas*; supra, pág. 115; *Moreno Lorenzo y otros v. Depto. Fam.*, supra, págs. 839–840; *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581, 591 (2020); *Torres Rivera v. Policía de PR*, supra, págs. 626–627.

La deferencia a la interpretación que las agencias hacen sobre las leyes que le corresponde poner en vigor, cede cuando: 1) erró al aplicar la ley, 2) actuó arbitraria, irrazonable o ilegalmente o 3) lesionó derechos constitutivos fundamentales. El criterio administrativo no prevalece, cuando la interpretación estatutaria que realiza la agencia provoca un resultado incompatible o contrario al propósito para el cual se aprobó la legislación y con la política pública promovida. Es decir, la deferencia cede ante una determinación que resulte irrazonable, ilegal o que conduzca a la comisión de una injusticia. *OEG v. Martínez Giraud*, supra, pág. 90-91. Por ello, los tribunales tienen que armonizar, siempre que sea posible, todos los estatutos y reglamentos administrativos involucrados para la solución justa de la controversia, de modo que se obtenga un resultado sensato, lógico y razonable. *Moreno Lorenzo y otros v. Depto. Fam.*, supra, pág. 843.

Así también, el Tribunal Supremo de Puerto Rico ha insistido que, en cuanto a las revisiones judiciales, en consideración a la norma de corrección que cobija a las determinaciones realizadas por el foro primario, cuando un peticionario señala errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, la naturaleza del derecho apelativo requiere que éste ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro primario utilizando alguno de los mecanismos de recopilación de prueba oral, como lo son: (1) transcripción de la prueba, (2) exposición estipulada o (3) exposición narrativa. *Pueblo v. Pérez Delgado,* 211 DPR 654 (2023).

En consonancia y, específicamente en el contexto de un proceso administrativo, en *Graciani Rodríguez v. Garage Isla Verde,*

*LLC*, 202 DPR 117 (2019), en el contexto de un proceso administrativo, se impugnó la apreciación de la prueba y, sobre ello, el Tribunal Supremo de Puerto Rico señaló lo siguiente:

> "[c]uando la impugnación de las determinaciones de hecho se base en la prueba oral desfilada, así como en la credibilidad que le mereció a la agencia administrativa, este Tribunal ha expresado que '[e]s imprescindible que se traiga a la consideración del foro revisor la transcripción de la vista celebrada o una exposición narrativa de la prueba." *Camacho Torres v. AAFET*, 168 DPR 66, 91 (2006).

Dicho de otro modo, los tribunales apelativos no deben intervenir con la apreciación de la prueba oral hecha por la agencia recurrida cuando no se tiene forma de evaluar la evidencia presentada, debido a que la parte promovente no elevó una transcripción o una exposición narrativa de tal prueba. J.A. Echevarría Vargas, *Derecho Administrativo Puertorriqueño*, San Juan, Ed. SITUM, 2017, pág. 325.

Cuando se apuntare error en la apreciación de la prueba oral o que alguna determinación de hechos no esté sostenida por la prueba y sea necesario recurrir a la reproducción de la prueba oral, la parte recurrente lo hará constar en moción por separado, presentada junto al escrito inicial de revisión. De no solicitarlo así la parte recurrente, las demás partes podrán efectuar igual solicitud dentro de diez días contados a partir de la notificación del recurso de revisión. En dicha moción, la parte interesada sustanciará y probará la necesidad de recurrir a la prueba oral, con vista a las determinaciones de hechos de la agencia o del funcionario o funcionaria, haciendo referencia a las cuestiones planteadas en la solicitud de revisión y al contenido de los testimonios específicos que se interesa utilizar. La omisión de cumplir con esta regla podrá dar lugar a que se declare sin lugar la moción. La reproducción de la prueba oral se hará conforme a lo estatuido en las Reglas 76 y 76.1 de este Reglamento, debiendo efectuar la agencia los trámites que

corresponden al Tribunal de Primera Instancia. 4 LPRA Ap. XXII-B, R. 66.

Es sabido, y así lo reconoce nuestro ordenamiento jurídico, que los tribunales de mayor jerarquía no pueden cumplir a cabalidad su función revisora sin que se le produzca, mediante alguno de estos mecanismos, la prueba que tuvo ante sí el foro primario. *Pueblo v. Pérez Delgado*, supra, pág. 671. El Máximo Foro Judicial local ha reiterado en múltiples ocasiones las disposiciones reglamentarias que gobiernan los recursos que se presentan ante el Tribunal de Apelaciones deben observarse rigurosamente. Así, los abogados vienen obligados a dar fiel cumplimiento al trámite prescrito en las leyes y en los reglamentos aplicables para el perfeccionamiento de los recursos, y no puede quedar al arbitrio de los abogados decidir qué disposiciones reglamentarias aplican y cuándo. De esta forma, es tarea del recurrente presentar al foro revisor la prueba oral bajo la que se pretende impugnar las determinaciones del tribunal *a quo*. *Pueblo v. Pérez Delgado*, supra, págs. 671-672.

Es decir, que el recurrente o la parte que impugna la adjudicación de apreciación y credibilidad de la prueba oral desfilada tiene el deber y obligación de colocar al Tribunal de Apelaciones en posición de atender correctamente sus planteamientos, mediante la presentación de la transcripción de la vista o, en remedio, con una exposición narrativa.

El Tribunal Supremo en el caso *OEG v. Martínez Giraud*, supra, estableció que:

> "es un principio reconocido que, de ordinario, el peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia, o quien sostiene la afirmativa en el asunto en controversia. De esta forma, aquel que busca de un remedio o una sanción en el ámbito administrativo, al igual que en el judicial, tiene que probar su caso. Es decir, tiene que evidenciar, con prueba suficiente en derecho, que sus alegaciones no constituyen meros señalamientos, sino un reclamo

cierto y sostenible. Lo contrario, atentaría contra los principios más elementales de la justicia." *OEG v. Martínez Giraud, supra,* pág. 97.

Añade el Tribunal Supremo que, cuando la parte querellada se enfrenta a un proceso adversativo que pudiera implicar una multa cuantiosa o, en peor escenario, hasta la pérdida o destitución del empleo, la carga probatoria no puede recaer, bajo ningún concepto, en el querellado. *OEG v. Martínez Giraud, supra.*

El Máximo Foro local expresa categóricamente que el peso de la prueba le corresponde de principio a fin a la Agencia. Y, por consiguiente, es totalmente inaceptable, desde el punto de vista de responsabilidad pública, permitirles a las agencias que presenten querellas sin tan siquiera poseer prueba mínima para poder probar los cargos e infracciones que le imputan al querellado. Más aún, ante un caso en donde la parte querellada sufre de un menoscabo en su interés propietario. *Merrero Caratini v. Rodríguez Rodríguez,* 138 DPR 215, 221 (1995). Véase, además, *Torre Solano v. PRTC,* 127 DPR 499, 523 (1990), D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme,* 3ra ed., FORUM, (2013), p. 834.

### III.

Ante el recurso presentado es menester establecer, en un principio, las diferencias entre las determinaciones de derecho y, de hecho. Esto debido a que el recurrente realiza cuestionamientos de ambos tipos de determinaciones. Es altamente sabido que, sobre los cuestionamientos de derecho, los tribunales revisores pueden entrar a considerar todos los aspectos de éstas. Por otro lado, con los cuestionamientos de hechos, existe una presunción de legalidad y corrección que solo puede ser rebatida con evidencia sustancial.

Como primer error, la CMCC plantea que erró la JRCM al establecer que el peso de la prueba en demostrar el funcionamiento de los mecanismos de seguridad le pertenecía a la parte recurrente

en lugar de la agencia administrativa que impuso las multas. Sobre este señalamiento de error podemos concluir que le asiste la razón. En el foro administrativo, el peso de la prueba lo tiene el querellante, en este caso la JRCM.

No hay duda en que, cuando la parte querellada se enfrenta a un proceso adversativo en la agencia administrativa que pudiera implicar una multa cuantiosa, la carga probatoria no puede recaer, bajo ningún concepto, en el querellado. Véase, *OEG v. Martínez Giraud, supra,* pág. 98. La agencia tiene la responsabilidad de demostrar que cuenta con la prueba mínima para probar los cargos contra el querellado. Esto como parte del debido proceso de ley, durante una vista, en donde el querellado sufre un menoscabo en su interés propietario. Véase, D. Fernández Quiñones, *op. cit.*, p. 834.

En este caso, es la Junta Reglamentadora del Cannabis Medicinal quién comienza un proceso adversativo contra la parte querellada, aquí recurrente. Aquel que busca una sanción en el ámbito administrativo, al igual que en el judicial, tiene que probar su caso. Es decir, tiene que evidenciar, con prueba suficiente en derecho, que sus alegaciones no constituyen meros señalamientos, sino un reclamo cierto y sostenible. Lo contrario, atentaría contra los principios más elementales de la justicia. *OEG v. Martínez Giraud*, supra, pág. 97.

Ahora bien, en ausencia de una transcripción de la vista adjudicativa y de la prueba allí presentada, nos vemos imposibilitados de cumplir a cabalidad con nuestra función apelativa.

Por estar ampliamente relacionados entre sí, discutiremos en conjunto los planteamientos de error del 2 al 6. La CMCC plantea como error en la adjudicación que:

(2) Erró la JRCM al imponer multa de $20,000.00 por infracción al Artículo 46, Inciso (I), Sub Inciso (3), y a tenor con el Artículo 46, Inciso (M) del Reglamento 9038.

(3) Erró la JRCM al imponer multa de $5,000.00 por infracción al Artículo 50, Inciso (B), Sub Inciso (2), y a tenor con el Artículo 50, Inciso (I) del Reglamento 9038.

(4) Erró la JRCM al imponer multa de $5,000.00 por infracción al Artículo 50, Inciso (C), Inciso (D), Inciso (G), Sub Inciso (1), y a tenor con el Artículo 50, Inciso (I) del Reglamento 9038.

(5) Erró la JRCM al imponer multa de $20,000.00 por infracción al Artículo 53, Inciso (C), y a tenor con el Artículo 123, Inciso (A), Sub inciso (1) del Reglamento 9038.

(6) Erró la JRCM al imponer multa de $20,000.00 por infracción al Artículo 58, Inciso (C), Sub Inciso (10) y Artículo 60, Inciso (A), Sub Inciso (1) y Sub Inciso (4), y a tenor con el Artículo 123, Inciso (A), Sub inciso (1) del Reglamento 9038.

En primer lugar, la Asamblea Legislativa delega la facultad de imponer multas a la Junta Reglamentadora del Cannabis Medicinal. También es cierto que las determinaciones que tomen las agencias son revisables ante nuestro Tribunal. No obstante, como hemos dicho antes, esto debe ser dentro del marco de deferencia al expertise de las mismas, por lo que les cobija una presunción de legalidad y corrección que solo puede ser derrotada con evidencia sustancial.

Si bien es cierto que, en el proceso administrativo, el peso de la prueba le corresponde a la agencia querellante, ante un proceso apelativo se revierte el peso de la prueba. Es decir que, en el proceso apelativo, el peso de la prueba corresponde a la parte recurrente o a aquella que trata de impugnar una determinación del foro primario.

Para entrar en los méritos de unas alegaciones como las de este caso, era deber de la parte recurrente colocar en posición a este tribunal, acorde a lo establecido en la jurisprudencia y en la Regla 66 del Tribunal de Apelaciones. De esta forma, colocarnos en posición de evaluar evidencia sustancial que pueda derrotar tal

presunción de corrección ante las agencias. Es decir, este Tribunal está impedido de ver en sus méritos tales alegaciones y de cumplir a cabalidad nuestra función revisora, sin una reproducción de la prueba sobre la que descansa la determinación del foro primario, en este caso, la Junta Reglamentadora del Cannabis Medicinal.

Como séptimo error, el recurrente alega que la JRCM erró al no permitir el testimonio pericial de la testigo. Nos disponemos a resolver el derecho relacionado al caso de autos, más recalcamos que, la parte no nos pone en posición de atender el asunto.

Sobre la calificación del testigo pericial, el juzgador en el foro primario tiene una amplia discreción con relación a la admisión o exclusión de prueba pericial. Si concluye que un testigo no tiene las cualidades requeridas para declarar como perito, con relación a la materia que se está investigando, puede excusarlo. Sus determinaciones son ampliamente discrecionales, de manera que no podemos revocarle, a menos que sean claramente erróneas. *S.L.G. v. Mini-Warehouse*, 179 DPR 322, 325 (2010); *Salem v. US Line Co.*, 370 US 31, 35 (1962).

El propósito del testimonio pericial se ampara bajo el fundamento de ayuda al juzgador. En este sentido, existen dos interpretaciones sobre el alcance al concepto de ayuda al juzgador: (1) cuando la opinión pericial recae sobre un asunto en que el juzgador tenga conocimiento general, pero ese conocimiento se verá expandido y particularizado por la ayuda pericial y; (2) cuando la prueba pericial es sobre materia que está fuera del alcance del lego, esto por su naturaleza científica o especializada. Véase, E.L. Chiesa Aponte, *Tratado de Derecho Probatorio*, 1ra ed., USA, Publicaciones JTS, 2005, T. I, pág. 498.

A su vez, Chiesa nos dice que la ayuda al juzgador que justifica el testimonio pericial ha de ser extrajurídica. Por ejemplo, un juez no necesita peritaje jurídico—salvo en derecho extranjero.

Dicho de otra forma, la prueba de testimonio pericial no tiene valor probatorio, si realmente no es de ayuda pericial ante un juzgador cuyo expertise en el tema es altamente reconocido y goza de la deferencia de nuestros tribunales. La facultad y el expertise para interpretar el reglamento es de la agencia administrativa.

Expuesto todo el derecho, nos resulta imposible cumplir a cabalidad con nuestra función revisora y considerar cualquiera de los planteamientos de errores de hechos de la Agencia. Aun considerando que el peso de la prueba corresponde a la JRCM, concernía al recurrente colocarnos en posición, mediante la reproducción de la transcripción de la prueba oral, para revisar la supuesta actuación errónea de la Junta Reglamentadora del Cannabis Medicinal.

**IV.**

Por los fundamentos antes expuestos, se confirma la resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones